## Angelichio v. Myers

C.P. of Berks County, No. 05-15422

*James I. Devine*, for plaintiff.
*John R. O'Rourke* and *Paul W. Grego*, for defendants.

SPRECHER, *J.*, June 30, 2014—Defendant, Michael J. D'Aniello, Esquire,

administrator of the estate of Tyrone Diefenderfer, appeals the orders dated February 25, 2014, January 30, 2014, and October 9, 2013. This opinion is filed pursuant to Pa. R.A.P. 1928.

## FACTS

Tina Marie Plotts died on February 27, 2004, as a result of a fire which started in the kitchen of the premises where she was a tenant. Defendant, Tyrone Diefenderfer (defendant), also resided on the premises, at least sporadically, and was staying there on the night of the fire. He was the only eyewitness to the incident. According to the landlords and owners of the premises, defendants Betsy Jo Myers and Joanne E. Myers, defendant did maintenance for them in exchange for the payment of rent to reside there. On the evening of the fire, defendant had fallen asleep on a couch in the first floor living room after consuming a six-pack of beer. Ms. Plotts was in her designated second floor bedroom when a fire originated in the kitchen of the first floor of the residence. The cause and/or ignition source was determined to be an unattended pot on the right rear burner of the electric stove. The cause of the rapid progression and expansion of the fire was determined to be kerosene leaking from a defective kerosene container stored near the stove.

Defendant escaped the burning residence, but Ms. Plotts was trapped inside the dwelling and could not flee; her bedroom windows were sealed shut and the stairs were impassible. She was found dead by fire personnel.

Plaintiff, Joseph Michael Angelichio, filed a motion pursuant to Pa. R.C.P. 4019 against defendant's estate for defendant's failure to obey two court orders requiring his attendance at a videotape discovery deposition along with related discovery violations which impacted plaintiff's

ability to proceed with the lawsuit. In this motion, plaintiff outlines a long uncontroverted history of defendant's noncompliance with scheduled depositions.

Plaintiff's counsel first requested deposition dates for defendant by letter to defendant's counsel dated June 17, 2007. Defendant was then scheduled for a deposition on August 13, 2007, at 12:30 p.m. which was mutually agreeable to the parties. Defendant did not appear for the deposition, and his counsel stated that he could not locate him.

On August 27, 2008, defendant's present counsel entered his appearance for defendant. Plaintiff again requested deposition dates for defendant. Eventually, defendant's counsel provided several deposition dates; plaintiff selected October 15, 2008, with no objection from defendant, for a videotaped deposition. Again, defendant failed to appear. A new date of November 8, 2008, was selected for defendant's deposition. On October 27, 2008, defendant's counsel contacted plaintiff's counsel and stated that he was unable to locate defendant about the rescheduled deposition. On November 7, 2008, defendant's counsel notified plaintiff's counsel that because his office was unable to locate defendant, defendant's scheduled deposition of November 8, 2008, was cancelled.

On January 7, 2009, plaintiff's counsel wrote to defendant's counsel to request defendant's last known address and Social Security number so he could hire a private investigator to find defendant. After receiving the requested information, plaintiff hired a private investigator who found defendant. Plaintiff then served defendant with a subpoena to take his deposition on April 27, 2009. On April 23, 2009, plaintiff's counsel contacted defendant's counsel to confirm that defendant would appear for his deposition. By letter dated April 23, 2009,

plaintiff's counsel issued an amended notice of videotaped deposition in accordance with Pa. R.C.P. 4017.1. By letter dated April 26, 2009, defendant's counsel notified plaintiff's counsel that defendant refused to be videotaped and would therefore not appear for his deposition.

On April 28, 2009, April 29, 2009, and April 30, 2009, plaintiff's counsel contacted defendant's counsel to reschedule defendant's deposition. Ultimately, defendant's counsel informed plaintiff's counsel that defendant refused to be videotaped during his deposition.

On May 18, 2009, plaintiff filed a motion for contempt and for sanctions. On July 8, 2009, the Honorable Scott E. Lash, on behalf of Senior Judge Albert A. Stallone, entered an order requiring defendant to appear for a videotaped deposition.

Plaintiff filed a second motion for contempt and for sanctions on May 10, 2010. On August 25, 2010, Judge Lash on behalf of Senior Judge Stallone entered an order for defendant to appear for a videotaped deposition and further ordered that the videotape would be retained by counsel for only their own use and the court's use and would not be published to third persons. Defendant was also entitled to receive a copy of the videotape.

The parties mutually agreed on the date of November 10, 2010, for a videotaped deposition. By letter dated November 9, 2010, defendant's counsel notified plaintiff's counsel that defendant would not appear for the deposition on November 10, 2010.

The parties subsequently agreed on December 2, 2010, for defendant's deposition. By letter dated November 30, 2010, defendant's counsel notified plaintiff's counsel that defendant would not appear for this deposition because he

was out of town until January 1, 2011.

Defendant's deposition was then scheduled for January 31, 2011. By letter dated January 28, 2011, defendant's counsel cancelled this deposition. Defendant had told his counsel that "there is no way I'm getting involved." Defendant's counsel further stated in the letter, "obviously, Mr. Diefenderfer will not appear Monday, nor any other time the deposition is rescheduled."

The only statement defendant ever gave concerning the fire was an unsworn statement to a state trooper on the night of the fire. At that time he denied that he was the cause of the fire. Defendant died in January 2012.

After argument and a consideration of defendant's dismal record of non-compliance, this court entered the orders which are the subjects of the instant appeal. This court found that the most appropriate sanction in this case was to grant plaintiff's request for judgment in his favor and against defendant. Defendant filed an interlocutory appeal concerning this sanction.

## ISSUES

Defendant raises the following issues in his concise statement of errors complained of on appeal.

1. This court erred and manifestly abused its discretion in entering judgment against defendant, pursuant to Pa.R.C.P. 4019, as a result of defendant's failure to appear for his videotaped deposition, since there were less severe sanctions which would cure any alleged prejudice.

2. The record demonstrates that plaintiff bears some responsibility for the alleged prejudice which has accrued as a result of defendant's death. Moreover, the alleged prejudice is unfounded. None of the evidence produced

during the seven years of litigation in any way suggested that defendant was negligent or that his conduct was a substantial factor in causing the fire.

3. Given the lack of evidence indicating that defendant was negligent or that his conduct was a substantial factor in causing the fire, combined with plaintiff's failure to diligently pursue defendant's deposition prior to his death, the entry of judgment against him is erroneous, a manifest abuse of discretion and manifestly unjust to defendant.

4. Instead of the severe sanction of a judgment against defendant, this court could have entered less severe and more appropriate sanctions.

## DISCUSSION

This court shall first address the issue of the appropriateness of the default judgment against defendant as a discovery sanction. Dismissal is the most extreme sanction and should be imposed only in extreme circumstances. A trial judge is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced. In determining whether a discovery violation warrants the sanction of dismissal, the court must consider (1) the nature and severity of the violation, (2) the defaulting party's willfulness or bad faith, (3) the prejudice to the opposing party, (4) the ability to cure the prejudice, and (5) the importance of precluded evidence in light of the failure to comply. Each of these factors represents a necessary consideration, not a necessary prerequisite. *Rohm and Haas Company v. Lin*, 992 A.2d 132 (2010).

In the case sub judice, the nature and severity of the violation are great. Defendant refused to give a deposition,

not once, but at least seven times over a period of more than four years — even after the issuance of a subpoena and two court orders directing his compliance. The second court order attempted to accommodate defendant's abhorrence of a videotaped deposition by forbidding the dissemination of the videotape to anyone besides the parties and the court. Defendant still did not appear for his deposition in defiance to the court order. Moreover, defendant expressed no intention of ever complying with the discovery request for his deposition. Thus, this court found that defendant's actions were wilful and taken in bad faith.

The prejudice to plaintiff caused by defendant's refusal to be deposed was significant, and the prejudice could not be remedied. Defendant's intransigence prejudiced plaintiff by preventing plaintiff from pursuing his underlying claims and theories. Defendant was the *only* living witness to the fire; therefore, he was a vital witness for all parties. This court found that his refusal to give a sworn videotaped deposition reflected negatively on defendant. If he would have had nothing to hide, he would have allowed himself to be deposed, regardless of the videotaping. Defendant's counsel should have advised defendant that he had to cooperate fully and his failure to do so would result in sanctions against him personally and/or the defense. Defendant's counsel was aware of these risks to defendant and to defendant's case. Defense counsel could have petitioned the court for help in attaining his client's cooperation. This court has often aided other attorneys on various occasions when their clients were uncooperative and, thus, in violation of the rules of civil procedure and/or court orders.

Defendant presented no reasons for his refusal to be deposed. Defendant's wilful and obdurate behavior caused plaintiff to expend extra money and time in attempting to

depose him. Defendant's testimony was critical to making or breaking both plaintiff's case and defendants' case. With defendant's eyewitness testimony and an understanding of his role in the events of that evening, the parties may have been able to reach a settlement or a final resolution of the entire case one way or the other. Regardless, his deposition would likely have resulted in the avoidance of the expense of a trial.

Defendant filed a motion for summary judgment, contending that there was no evidence to link him to the cause of the fire. This court denied that motion because critical discovery was not yet completed. Defense counsel wants defendant to be rewarded for his refusal to obey court orders and his refusal to disclose important evidence in a tragic case involving the death of an innocent tenant located one flight above the landlords' stove and the source of the fire. Defendant did not communicate with his counsel and hid his whereabouts throughout this litigation and prolonged the resolution of the case. Plaintiff was correct in needing defendant's deposition because defendant died before the case could proceed to trial.

Defendant exited the burning building and lived. His refusal to explain what happened and his actions or inactions obfuscate all the issues. This court found that defendant's disobedience to court orders and a subpoena and his continuous refusal to cooperate in giving a deposition were so severe and the consequences so prejudicial to all of the parties, that the ultimate sanction of a judgment against him was necessary. This court could only surmise from defendant's actions that he had something to hide. There were no less severe sanctions which could cure the prejudice wrought by defendant.

Defendant also argues that plaintiff bears some

responsibility for any prejudice which has accrued as a result of defendant's death and that none of the evidence produced during the litigation suggests that defendant was negligent or that he was a substantial factor in causing the fire. This contention is meritless and ridiculous. Short of kidnapping defendant or having him held in custody so that defendant was certain to be present for his deposition, this court is at a loss as to what more plaintiff should have done. Assuming defense counsel did everything in his power to advise, warn, or threaten defendant of the possible risky penalties to which his noncompliance exposed him, defense counsel himself could have petitioned this court for more serious relief to assure that his client did nothing further to jeopardize the defense case. To suggest that plaintiff bears some responsibility would also have to be applied at least equally to defense counsel having more responsibility. Furthermore, to argue that defendant "was [not] negligent or that he was [not] a substantial factor in causing the fire" would be the same as arguing that the existing evidence showing that defendant was sleeping downstairs inside the property after consuming a six pack of beer while an overcooked pot on the working stove started the fire in close proximity of the accelerant that spread the fire which was defendant's responsibility to deliver to the furnace located in the building, should all be completely disregarded.

Defendant seems to suggest that plaintiff should have filed additional motions for sanctions. That procedure would have been a futile attempt to achieve nothing. Defendant by his actions or inaction had already indicated that he would not be deposed. Furthermore, he clearly articulated that decision to his own attorney who did nothing more than relay that information to plaintiff's counsel.

Defendant's disobedience has resulted in unanswered

questions. Only two persons were in the residence in the evening of the fire. One of those tenants died in the fire because she could not escape due to sealed windows. Someone left an unattended pot burning on the stove. Defendant, the handyman and only male residing in the property, never testified under oath that he was not the cause of the fire or that he was not the person who sealed the windows shut. Therefore, one could find that his refusal to testify under oath was due to his desire to conceal his part in this tragedy.

In accordance with the foregoing opinion, this court submits that defendant's appeal should be denied and its order affirmed.